UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------X
MASHON BAINES and NANCIE FRONING
on behalf of themselves and all
others similarly situated,                    ADOPTION ORDER
                                              21-CV-5330(JS)(AYS)
                    Plaintiffs,

        -against-

NATURE'S BOUNTY (NY) INC. and
THE BOUNTIFUL COMPANY (NY),

                    Defendants.
--------------------------------X
APPEARANCES
For Plaintiffs:     Michael D. Braun, Esq.
                    Kuzyk Law, LLP
                    1999 Avenue of the Stars, Suite 1100
                    Los Angeles, California  90067

                    Maia Kats, Esq.
                    Just Food Law PLLC
                    5335 Wisconsin Avenue NW, Suite 440
                    Washington, District of Columbia  20015

For Defendants:     William A. Delgado, Esq.
                    DTO Law
                    27 East 28th Street, Suite 15019
                    New York, New York  10016

                    Megan O'Neill, Esq.
                    DTO Law
                    2400 Broadway, Suite 200
                    Redwood City, California  94063

SEYBERT, District Judge:

        Mashon  Baines  and  Nancie  Froning  (together,  the

"Plaintiffs"),  on  behalf  of  themselves  and  others  similarly

situated, commenced this action against Nature's Bounty (NY), Inc.

and  The  Bountiful  Company  (NY)  (together,  the  "Defendants")

asserting state-law-based claims of false advertising.[1]  At its essence, Plaintiffs' contention is that Defendants' subject Product[2] -- a dietary supplement -- is not fish oil as Defendants claim and represent it to be.  (See generally Am. Compl., ECF No. 21.)

Defendants moved to dismiss Plaintiffs' Amended Complaint (hereafter, the "Dismissal Motion") (see ECF No. 25), which Plaintiffs opposed (see ECF No. 27).  The Dismissal Motion, and Defendants' related motion requesting the Court take judicial notice of certain documents (hereafter, the "Judicial Notice Motion") (see ECF No. 26), were referred to Magistrate Judge Anne Y. Shields for a report and recommendation.  Currently before the Court is the Magistrate Judge's January 3, 2023 Report and Recommendation ("R&R") (ECF No. 30) recommending the granting of Defendants' Judicial Notice and Dismissal Motions, together with Plaintiff's objections thereto (ECF No. 32), as well as Defendants' response (ECF No. 33).  For the reasons stated herein, the Court ADOPTS the R&R in its entirety, and grants Defendants' Judicial Notice and Dismissal Motions.

---

[1]  As Magistrate Judge Anne Y. Shields states in her January 3, 2023 Report and Recommendation ("R&R"): "While all claims arise under state laws, federal jurisdiction is properly alleged pursuant to 28 U.S.C. § 1332(d)(2)."  (R&R, ECF No. 30, at 2.)

[2]  The terms of art defined in the R&R are adopted herein, familiarity with which is assumed.

BACKGROUND

I.   Factual Background

The Court presumes the parties' familiarity with the factual background as set forth in Judge Shields' R&R and incorporates her recitation herein by reference.   (See R&R at 3-21.)   The Court recites only those facts necessary to resolve the instant motions.

Defendants' subject Product is a dietary supplement labeled Fish Oil, which includes, inter alia, a "USP Verified" mark.   (See Am. Compl. ¶¶ 5, 6.)   Defendants claim the Product contains "Eicosapentaenoic Acid ('EPA')" and "Docosahexaenoic Acid ('DHA')--the essential omega-3 fatty acids that naturally occur in fish."   (Id. ¶ 5.)   However, Plaintiffs' allege this claim is false and misleading:   "Contrary to what is represented on the label, . . . this Product is not fish oil, nor does it contain a single milligram of EPA or DHA."   (Id. ¶ 7.)   As Plaintiffs further allege, that is because Defendants employ a chemical process known as trans-esterification to convert "low-grade oil derived from fish offal", or waste, "into a synthesized product that does not otherwise exist in fish."   (Id. ¶ 8.)   According to Plaintiffs, by this process, "the Omega-3s [in the fish oil], which include DHA and EPA, are converted into ethyl esters" which "are different molecules than the Omega-3s which exist naturally in fish oil" and that "[t]hese new chemical by-products are universally recognized

3

by their common or usual name—Fatty Acid Ethyl Esters ("FAEE")." (Id.; see also, e.g., id. at ¶ 71 ("[A]n omega-3 acid ethyl ester cannot be called fish oil.  [Defendants'] Product is a fatty acid ethyl ester.  Labeling and selling it as fish oil is false, misleading, deceptive and unlawful); ¶ 79 ("Fish Oil and Omega-3 Acid Ethyl Esters are not the same.  They are different on a molecular level and have different common and usual names.").)

II.  Judge Shields' Report & Recommendation

In preparing her R&R recommending Defendants' Dismissal Motion be granted, Judge Shields exhaustively reviewed the scientific and trade literature cited in the Amended Complaint. (See R&R at 5 ("While not every reference material [cited in the Amended Complaint] is discussed in this [R&R], the Court has been careful to read all of these materials in the light most favorable to Plaintiffs, without acting as an expert in scientific fields such as chemistry, or as to the business and taxation of the commercial fishing industry.").)  Based upon those authorities, Judge Shields concluded that the common or usual name of the Product is "fish oil" consistent with federal labelling requirements. (See id. at 25-28.)  As a result, Plaintiffs' state-law claims are preempted. (See id. at 28-29.)  Similarly, finding the Product's label is neither false nor misleading, the Magistrate Judge found Plaintiffs' claims fail. (See id. at 29-33.)  More particularly, Judge Shields found the type of EPA and DHA -- i.e.,

ethyl-ester versus triglyceride -- present in the Product is immaterial to reasonable consumers, and, even if it were material, the Product expressly discloses EPA and DHA are present in ethyl-ester form. (See id. at 31-33.)  Finally, Judge Shields found Plaintiffs lack standing to pursue injunctive relief. (See id. at 34.)

DISCUSSION

I.   Legal Standard

A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); see also FED. R. CIV. P. 72(b)(3). The district judge must evaluate proper objections de novo; however, where a party "makes only conclusory or general objections, or simply reiterates [the] original arguments, the Court reviews the Report and Recommendation only for clear error." Pall Corp. v. Entegris, Inc., 249 F.R.D. 48, 51 (E.D.N.Y. 2008) (quoting Barratt v. Joie, No. 96-CV-0324, 2002 WL 335014, at *1 (S.D.N.Y. Mar. 4, 2002)); see also FED. R. CIV. P. 72(b)(3); Thomas v. City of N.Y., Nos. 14-CV-7513, 16-CV-4224, 2019 WL 3491486, at *4 (E.D.N.Y. July 31, 2019) ("Objections seeking to relitigate arguments rejected by the magistrate judge do not constitute proper objections, and, as a result, are subject to clear error review."). Further, "[i]n this district and circuit, it is established law that a district judge will not consider new arguments raised in

5

objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not." Trustees of Metal Polishers Local 8A-28A Funds v. Nu Look Inc., No. 18-CV-3816, 2020 WL 5793204, at *3 (E.D.N.Y. Sept. 29, 2020) (quoting Illis v. Artus, No. 06-CV-3077, 2009 WL 2730870, at *1 (E.D.N.Y. Aug. 28, 2009) (cleaned up; collecting cases)).

II.   Analysis

A.   Plaintiffs' Objections

Plaintiffs contend the Magistrate Judge erred by "misconstru[ing] the facts as alleged, and/or improperly substitut[ing] at this juncture her judgment for that of the reasonable consumer, producing in each case an erroneous finding of fact or law," to wit, that:

> • All claims are preempted because fish oil is the common name of the Product -- including the claim that the totality of the label (and not just the name) is deceptive ([R&R] at 25-29);
> • Chemical trans-esterification of fish oil is a minor and insignificant processing step ([id.] at 8-10, 17);
> • The use of ethyl esters in lieu of DHA and EPA is without import ([id.] at 12-15);
> • The Product is USP certified ([id.] at 15); and, critically,
> • None of the above attributes, characteristics, processes, and/or qualities, or lack thereof, either singularly or collectively, are material to a reasonable consumer making a purchasing decision, and therefore cannot be deceptive as a matter of law ([id.] 29- 33).

(Obj. at 3.)  More specifically, Plaintiffs advance six objections.

First, as to the Magistrate Judge's finding that trans-esterification is insignificant and immaterial to consumers, Plaintiffs contend that, contrary to their allegations, Magistrate Judge Shields found "trans-esterification is simply another method for creation of fish oil," which leads to her "erroneous[] conclu[sions] that the transesterification process has no bearing on the fundamental nature of the Product as fish oil" and, thus, "Plaintiffs' claims to the contrary are preempted."  (Obj. at 4.) It appears that Plaintiffs object to the Magistrate Judge's dismissal-as-immaterial of the molecular difference between fish oil and the Product because that finding is not consistent with their allegations that transesterification "is a distinctive and highly unnatural process that is material and that they would not have purchased the Product, or would have paid less for it, had they understood the true nature of the Product."  (Id. at 5 (clarifying that they allege "they were misled by the label in its entirety, as well as singularly by its name").)

Second, Plaintiffs would assign error to Magistrate Judge Shields' finding, after "review of the reference material contained in the Amended Complaint," the "limited scientific use of the addition of the 'EE' to the terms DHA and EPA to identify ethyl esters."  (Obj. at 6 (citing R&R at 13).)  They contend the Magistrate Judge reached this erroneous conclusion in the face of

7

vast "scientific authority detailed in the body of the Complaint."
(Id. (citing Am. Compl., ¶¶ 56-57, 59, 66, 67-71) (emphasis
added).)

Third, Plaintiffs maintain it was error for the
Magistrate Judge to find the "Product is USP certified. Plaintiffs
do not argue otherwise." (Obj. at 7 (quoting R&R at 15).) That
is because, while Plaintiffs acknowledge Defendants' claim that
their Product is USP certified, "the [Amended] Complaint clearly
alleges that such a representation is false and misleading." (Obj.
at 7 (citing Am. Compl. ¶ 92).) Thus, Plaintiffs argue the
Magistrate Judge "failed to heed black letter law on assessing a
motion to dismiss," by not accepting as true the facts they allege
in the Amended Complaint and considering those facts in the light
most favorable to them. (Id.; see also id. at 8 ("[I]t is axiomatic
that 'Rule 12(b)(6) does not countenance dismissals based on a
judge's disbelief of a complaint's factual allegations.'" (quoting
Twombly, 550 U.S. at 556)).)

Fourth, Plaintiffs assert Magistrate Judge Shields erred
in finding the common or usual name for the Product is fish oil
and that their "allegations that the Product is deceptively named
or labeled in its entirety, is preempted." (Obj. at 8 (citing R&R
at 26 (emphasis in original)).) Plaintiffs present two bases for
this objection: (1) the Magistrate Judge's finding clashes with
their allegations in the Amended Complaint "and the fact that there

8

are a wide variety of marine-based Omega-3 offerings which are properly labeled as 'Omega,' not as fish oil" (id. (footnote omitted)); and (2) the assertion that the Magistrate Judge "ignores the monographs and respective naming conventions used by multiple authorities," which Plaintiffs relied upon to bolster their allegations (id. at 9-10). Plaintiffs further clarify they "do not seek to impose a specific name on Defendant's Product," but "allege only that the way the Product is currently labeled is deceptive and misleading." (Id. at 10.) Plaintiffs rely heavily upon Rodriguez v. Target Corporation, a 2022 case from the Southern District of New York that also involved the alleged mislabeling of a dietary supplement as fish oil, to support their objection. (See id. at 10-11 (discussing Rodriguez v. Target Corp., No. 22-CV-2982, 2022 WL 18027615 (S.D.N.Y. Dec. 30, 2022)).)

Fifth, Plaintiffs assert error with the Magistrate Judge's determination that no reasonable consumer would be misled by the Product label as a matter of law. (Obj. at 12.) Highlighting the Magistrate Judge's finding that "there is no falsity in calling the Product fish oil" because "[i]t is implausible to believe that any consumer shopping for a fish oil supplement seeks only DHA/EPA with an intact glycerol backbone molecule" (R&R at 31), Plaintiffs argue that their claim as alleged is "that when seeking to purchase 'fish oil,' with DHA and EPA no less, a reasonable plaintiff would generally expect the oil

squeezed from a fish, not a synthetic omega-3 that was created by chemically altering fish offal - waste - and thereby producing a Product containing new and distinct, artificial compounds." (Obj. at 12 (citing Am. Compl. ¶ 55).) Additionally, Plaintiffs alleged "they were misled by the entirety of the labeling claims, and not exclusively the Product name." (Id. (citing Am. Compl. ¶¶ 20, 29).) They maintain that "[r]ead holistically, the totality of [Defendants'] misrepresentations, in concert with each other or standing alone, misled Plaintiffs into believing that Defendants' Products had characteristics and traits that they do not have;" therefore, their "claim cannot possibly be preempted given FDCA's express prohibition against labeling that is misleading, regardless of whether the label has otherwise complied with a specific federal regulation." (Id. at 13.) Moreover, Plaintiffs believe the Magistrate Judge applied a probability standard and not the applicable plausibility standard in recommending the Dismissal Motion be granted. (See id. at 13-15.)

Sixth and finally, Plaintiffs object to the Magistrate Judge's recommendation that Plaintiffs not be granted leave to amend since (1) in their concluding sentence of their Opposition, Plaintiffs requested such leave, and (2) leave to amend should be freely given, especially in light of Judge Schofield's decision in Rodriguez, a purported analogous case. (Obj. at 16.)

B.   Consideration of R&R and Plaintiffs' Objections Thereto

1.   The Judicial Notice Motion

As an initial matter, Magistrate Judge Shields recommends that Defendants' related Judicial Motion Notice, to which Plaintiffs did not respond, "be granted to the extent that it refers to any . . . documents [referenced in the R&R], as both unopposed and on the merits." (R&R at 22.)  In the absence of any objection by Plaintiffs to this recommendation, and finding said recommendation is not clearly erroneous, it is ADOPTED. Accordingly, the Judicial Notice Motion is granted as to the following two items only: the entirety of the label for the Product (see ECF Nos. 26-1 (Defs.' Ex. A), 26-3(Defs.' Ex. C)), and the publicly available statement on the FDA website providing labeling guidance regarding the use of scientific names to describe ingredients (see ECF No. 26-4 (Defs.' Ex. D)).

2.   Plaintiffs' Referenced Documents

Magistrate Judge Shields also stated that the numerous documents Plaintiffs referenced in their Amended Complaint, which she directed the Plaintiffs to file (and which were filed (see ECF No. 31-1 through 31-42)), "are integral to the facts pled in support of Plaintiffs' claims and are, therefore, properly considered." (R&R at 20.)  Indeed, at the outset, the Magistrate Judge stated:

11

> While not every reference material is
> discussed in this [R&R], the Court has been
> careful to read all of these materials in the
> light most favorable to Plaintiffs, without
> acting as an expert in scientific fields such
> as chemistry, or as to the business and
> taxation of the commercial fishing industry.
> Where any such expertise is necessary, the
> Court has refrained from interpretation and
> applied only its own plain language reading of
> each document in the light most favorable to
> the text of the Amended Complaint.  The Court
> states the facts therein – not its own
> interpretation thereof.

(Id. at 5. (further recognizing that the basic facts alleged by

Plaintiffs are "supported by hundreds of pages of scientific

articles").)  She further advised that she considered the full

text of the references materials when determining the plausibility

of Plaintiffs' claims.  (See id.; see also id. at 21 (clarifying

that "[e]ach referenced document will be considered in its entirety

in connection with the [Dismissal M]otion").)

Plaintiffs have not objected to the Magistrate Judge's

consideration of its referenced document.  (See generally Obj.)

Nor does this Court find clear error in Magistrate Judge Shields

doing so.  Moreover, as to the referenced documents, it is well-

settled that "[w]hen such documents 'contradict allegations, the

documents, not the allegations, control, and the court need not

accept the allegations in the complaint as true.'"  Catania v. NYU

Langone Health System, No. 22-CV-4362, 2022 WL 17539121, at *1

(S.D.N.Y. Dec. 5, 2022) (quoting TufAmerica, Inc. v. Diamond, 968

F. Supp. 2d 588, 592 (S.D.N.Y. 2013)) (cleaned up); (see also R&R at 5 (citing BYD Co., Ltd. v. VICE Media, LLC, 531 F. Supp. 3d 810, 817 (S.D.N.Y. 2021) (stating that where a document relied upon in a pleading contradicts allegations in the pleading, the court need not accept pleading allegations but may properly rely upon the referenced document))). The Court will assess Plaintiffs' objections accordingly.

### 3.   Lack of Objection re: Claim for Injunctive Relief

Among other relief, Plaintiffs sought injunctive relief. However, Magistrate Judge Shields found Plaintiffs lack Article III standing to bring such a claim since, as past purchasers, they "cannot plausibly allege any future harm that could be redressed by a grant of injunctive relief." (R&R at 34.)  In the absence of Plaintiffs objecting or otherwise addressed this finding, it is subject to clear error review.   Finding no such error, the recommendation is upheld and ADOPTED.

### 4.   The Court's Rulings on Plaintiffs' Objections

While not articulated, at their essence, the crux of each of Plaintiffs first five general objections is the implication that Magistrate Judge Shields should not have carefully reviewed and relied upon the very referenced materials Plaintiffs' cited to and relied upon in crafting their Amended Complaint, but, rather, should have taken their allegations at face value.  Indeed, each of these objections refer the Court to Plaintiffs' allegations.

(See Obj. at 5 (re: 1st Objection (relying upon Complaint in support of argument that trans-esterification process results in a new product that is not fish oil)); at 6 (re: 2nd Objection (asserting Magistrate Judge "ignores the wealth of scientific authority detailed in the body of the Complaint" (emphasis added))); at 8 (re: 3rd Objection (arguing Defendants' claims regarding USP certification are "refuted by detailed, well pled allegations in the Complaint")); at 9 (re: 4th Objection (as to finding Product's common name is "fish oil" thereby finding Plaintiff's claims preempted, relying upon "detailed allegations in the Complaint")); at 12 (re: 5th Objection (pointing to allegations in Amended Complaint to support position that reasonable consumers would be misled)).) Such general, conclusory objections are unavailing.[3]

But for their references to substantial documentation upon which they relied in alleging their claims, this argument may have been enough to sustain Plaintiffs objections. However, that is not the scenario here; Plaintiffs, having relied upon their cited reference documents in drafting their Amended Complaint, the Magistrate Judge was, likewise, permitted to rely upon them. And, to the extent such documents contradicted allegations in the

---

[3] Further, the Court notes that the arguments Plaintiffs present in support of their objections are largely reiterations of their arguments originally raised in opposition to the Dismissal Motion. As such, the Court engages in clear-error review.

pleadings, the Magistrate Judge was not constrained to accept Plaintiffs' pled allegations, but could properly rely upon the referenced documents.  That is what Magistrate Judge Shields has done.  Cf. Axon v. Florida's Natural Growers, Inc., 813 F. App'x 701, 704 (2d Cir. May 29, 2020) ("[W]here the allegations of a complaint are materially inconsistent with the evidence a plaintiff relies on to make those allegations, we may easily conclude that plaintiff's claims lack the facial plausibility necessary to survive a motion to dismiss." (quoting Fink v. Time Warner Cable, 714 F.3d 739, 742 (2d Cir. 2013); cleaned up)).  As Defendants aptly state, "Plaintiffs do not (and cannot) object to the fact that their own authorities refer to trans-esterified fish oil as 'fish oil'."[4]  (Resp., ECF No. 33, at 5; see also id. at 6-7 ("Plaintiffs [sic] own authorities establish the Product's common or usual name is 'undoubtedly' and 'without question' 'fish oil'." (citing R&R at 25, 27)); id. at 8 ("Plaintiffs selectively ignore their own authorities.").)

---

[4]  And, as Defendants note, Plaintiffs' "attempt to backtrack from the Amended Complaint by contending 'Plaintiffs do not seek to impose a specific name on Defendants' Product . . . [since they] allege only that the way the Product is currently labeled is deceptive and misleading'" "is disingenuous [as t]he Amended Complaint plainly alleges the common name of the Product is 'Fatty Acid Ethyl Esters.'"  (Id. at note 1 (first quoting Obj. at 10 and then quoting Am. Compl. ¶ 8 ("These new chemical by-products are universally recognized by their common or usual name—Fatty Acid Ethyl Esters ("FAEE").").)

As for Plaintiffs' objection to Magistrate Judge Shields' finding that the Product's label is not misleading, their arguments merely reiterate those originally made in opposition to the Dismissal Motion, thereby subjecting them to clear error review. (Cf., e.g., Opp'n, ECF No. 27, at 11-12, with Obj. at 4-5, 12-13.)  Upon such review and finding none, the Court overrules Plaintiffs' objection to the Magistrate Judge's finding:

> It is clear that whatever sub-class Plaintiffs seek to represent, their claims require a showing that reasonable consumers would be misled by labeling of the Product as fish oil. The Court holds, as a matter of law, that they would not.  First, there is no falsity in calling the Product fish oil.  Any such claim of falsity is implausible and therefore subject to disposition in connection with this motion to dismiss. . . .  [I]n Plaintiffs' pleading, their clams rise and fall on the notion that consumers would be misled by a difference observable only on a molecular level.  It is implausible to believe that any consumer shopping for a fish oil supplement seeks only DHA/EPA with an intact glycerol backbone molecule.  Moreover, even if such a consumer did exist – and the Court is unconvinced that any such person does – that consumer would see that the Product bears the common name of fish oil, and also discloses that the OM3's therein are ethyl esters. Under these circumstances there can be no plausible claim that any reasonable consumer is misled.

(R&R at 31 (citing Nguyen v. Algenist LLC, No. 22-CV-0013, 2022 WL 17251733, at *7 (S.D.N.Y. Nov. 28, 2022) (noting that even if a consumer could be misled, clarifying information existed in packaging information as a whole)); (cf. Resp. at 8 ("Plaintiffs

16

do not specifically object to this finding, and this finding is
not clearly erroneous." (emphasis in original))).

In any event, it is well settled: (1) "that a court may
determine as a matter of law that an allegedly deceptive
advertisement would not have misled a reasonable consumer," Fink,
714 F.3d at 741; and (2) that the "reasonable consumer" test is an
objective one, i.e., "that a significant portion of the general
consuming public or of targeted consumers, acting reasonably in
the circumstances, could be misled.'" Kennedy v. Mondelez Global
LLC, No. 19-CV-0302, 2020 WL 4006197, at *11-12 (E.D.N.Y. July 10,
2020) (citation omitted). In rejecting Plaintiffs' argument that
it was a question of fact whether reasonable consumers would be
misled by labeling of the Product as fish oil, Magistrate Judge
Shields observed that "[c]ourts have not hesitated to dismiss
patently implausible false advertising claims on motions to
dismiss." (R&R at 32.) Even upon de novo review, the Court finds
Magistrate Judge properly applied the objective reasonable
consumer standard when she "state[d] clearly" that, in this case:

> there is nothing false about labeling the
> Product as fish oil. Describing the Product
> this way denotes nothing more than a statement
> of fact that the OM3's therein are derived
> from fish oil. It says nothing about the
> process by which crude fish oil makes its way
> to the OM3's found in each capsule.
> Plaintiffs do not, and cannot, argue that
> other supplements containing OM3'S derived
> from fish oil are properly named only if they
> are derived via a different process. All such

17

> products get their OM3's from fish oil.  To
> suggest that molecular differences between
> such products make a difference to a
> reasonable consumer is plainly implausible.

(R&R at 33.)  Likewise, given the record and applicable case law,[5]

and even under de novo review, the Court finds no error in

Magistrate Judge Shields' subsequent conclusion that "all claims

alleging that a reasonable consumer would think otherwise are

implausible and lacking completely in merit."  Hence, Plaintiffs'

objections to said conclusion are OVERRULED.

Finally, there is no basis to reject the Magistrate

Judge's recommendation that Plaintiffs not be granted leave to

amend.  Plaintiffs "sought leave to amend only in the final

sentence of their opposition to the motion to dismiss and at no

point offered any new factual allegations that they would make if

granted leave to amend."  Powell v. Ocwen Loan Servicing, LLC, 840

F. App'x 610, 613–14 (2d Cir. Dec. 28, 2020) (citing Metz v. U.S.

Life Ins. Co. in City of N.Y., 662 F.3d 600, 601 (2d Cir. 2011)(per

curiam)); (see also Opp'n, ECF No. 27, at 25).  Under such a

---

[5]  The Court finds Plaintiffs' reliance upon Rodriguez v. Target
Corporation unpersuasive.  First, the subject product and
corresponding product label in Rodriguez is distinguishable from
the instant Product and label.  (Cf. Rodriguez v. Target Corp.,
No. 22-CV-2982, Second. Am. Compl. (ECF No. 39) at 2-5 (S.D.N.Y.
Sept. 1, 2022); see also Rodriguez, No. 22-CV-2982, Endorsed Order
re: Pl.'s Mot. Recons. (ECF No. 59) (S.D.N.Y. Jan. 18, 2023).)
Second and significantly, unlike here, there is no indication that
the Rodriguez Court considered the documents Rodriguez referenced
in his Second Amended Complaint when ruling upon the defendant's
motion to dismiss.

scenario, a court is well within its discretion to deny the requested leave to amend. See Metz, 662 F.3d at 601. Thus, there is no error in the Magistrate Judge's recommendation that Plaintiffs be denied leave to further amend their Amended Complaint.

To the extent not specifically addressed, the Court has considered Plaintiffs' remaining arguments in support of their objections, but finds them unpersuasive. Finding no error -- clear or otherwise -- in Magistrate Judge Shields' R&R, Plaintiffs' objections are OVERRULED in their entirety.

<u>CONCLUSION</u>

For the stated reasons, **IT IS HEREBY ORDERED** that:

I.   Plaintiffs' objections are OVERRULED;

II.  The R&R is ADOPTED IN ITS ENTIRETY;

III. Defendants':

    A. Judicial Notice Motion (ECF No. 26) is GRANTED to the extent articulated herein; and

    B. Dismissal Motion (ECF No. 25) is GRANTED; and

IV.  The Clerk of Court enter judgment accordingly and, thereafter, mark this case CLOSED.

**SO ORDERED.**

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:   March 28, 2023
         Central Islip, New York